Dan CONNORS, Appellant (Plaintiff),

v.

Charlene R. CONNORS,
Appellee (Defendant).

No. 87–287.

Supreme Court of Wyoming.

Feb. 7, 1989.

John C. Hoard, Casper, for appellant.

John R. Vincent and Kristin H. James of Hettinger, Leedy & Vincent, Riverton, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT and MACY, JJ., and BROWN,* J., Retired.

URBIGKIT, Justice.

This appeal offers the ex-husband's complaint about an unfavorable divorce decree and an order of contempt as including a post-decree increase in unpaid child support raising issues of notice after his failure to comply with the divorce decree and appear for scheduled hearings.

Husband Dan Connors (appellant) appeals from the Judgment and Divorce Decree, Order After Hearing, and Order of Contempt entered by the District Court of the Ninth Judicial District, Fremont County, Wyoming. The Judgment and Divorce Decree, among other things, divided the marital property, provided for support of the minor children and granted visitation. The Order After Hearing increased the child support obligation of appellant from $500 per month to $1,000 per month. The Order of Contempt contained various allegations of contemptuous behavior on the part of appellant, particularly in his failure to fulfill numerous provisions of the Judgment and Divorce Decree and in attempting to defraud appellee and the United States government. The district court ordered that appellant be denied the right to visitation with the children of the marriage until he complied with the provisions of the Judgment and Divorce Decree and directed issuance of a bench warrant for his arrest and incarceration in the county jail without bond for sixty days. Appellant appeals

* Retired June 30, 1988.

from the Judgment and Divorce Decree and both post-judgment orders. We will affirm the district court generally, except as to the increase in child support.

## I. ISSUES

Appellant presents a myriad of issues on appeal. The only good thing about this case in present observation is that so much happened before it reached this stage of first appeal.[1] We have consolidated appellant's issues for clarity to consider whether the district court abused its discretion when it:

1. Issued its Judgment and Divorce Decree imposing certain obligations on appellant and made various distributions of the marital property;

2. Found appellant in contempt for failing to comply with those obligations of the Judgment and Divorce Decree or to appear at the subsequent contempt hearing to which he was noticed; and

3. Increased appellant's child support obligation twofold absent the required petition by one of the parties requesting the increase.

## II. FACTS

Appellant and Charlene R. Connors (appellee) were married on February 4, 1977 and have two children. After nine years of marriage, appellant filed for divorce in Fremont County, Wyoming. On filing date, by appellant's request, District Court Judge Elizabeth A. Kail[2] entered a temporary restraining order enjoining each party from disposing of property owned either jointly

---

[1] Issues as presented by appellant as restated include:

A. Original divorce decree provisions:
(1) payment of then delinquent child support;
(2) future child support;
(3) personal property division;
(4) attorney's fees;
(5) indemnity; and
(6) visitation.
B. Contempt:
(1) cashing IRS tax refund check;
(2) personal property disposition and non-delivery;
(3) non-payment of child support;
(4) non-payment of attorney's fees;
(5) non-employment, hidden assets and general failure by change of jurisdiction to avoid decree responsibilities;
(6) contempt decree denial of visitation until contempt is purged; and
(7) issuance of bench warrant, including provision for sixty days confinement for contempt without bond.
C. Amended provisions in contempt proceedings to increase child support (which was not being paid anyway).
As relief, appellant requests a decision of this court to:
(1) revoke and void the Order of Contempt entered November 13, 1987 and the bench warrant issued in accordance thereto;
(2) revoke and void the portion of the Order After Hearing entered November 13, 1987 increasing appellant's child support to $1,000 per month;
(3) reverse, revoke and void portions of the Judgment and Divorce Decree entered May 7, 1987 ordering (a) payment of child support in the amount of $600 for the period January 1, 1986 through May 1, 1987; (b) payment thereafter of child support of $500 per month; that

any support order be made commensurate with appellant's ability to pay and continue for a period not to exceed the children's minority, i.e., age eighteen; and (c) delivery of various items of property, charging appellant with attempt to defraud and deceive appellee, ordering appellant to make the $600 back child support payments within two months of the date of the order, ordering appellant to pay $500 per month child support until the childrens' twenty-first birthdays, ordering appellant to pay appellee's attorney's fees and costs within three months of the order, and to personally indemnify and hold appellee harmless from any debt or obligation owing to First Interstate Bank of Riverton, N.A. or National First Mortgage Corporation of California, thereby making the order personal in nature and permitting its survival notwithstanding discharge of those debts by the bankruptcy court;
(4) require clarification of visitation rights;
(5) assign a different, unbiased judge to act and preside over all future matters in this case; and
(6) anything else that is equitable.
Appellee makes a more concise statement of the issues:
1. Did the trial court err in holding the plaintiff/appellant in contempt for violating a Court Order issued May 7, 1987?
2. Did the trial court err when it distributed the marital property?
3. Did the trial court abuse its discretion when it set the amount of child support?

[2] Judge Kail was removed from this case on September 5, 1986 on appellant's motion and Judge Robert B. Ranck was assigned and has continued throughout the proceeding.

or separately; from molesting, harassing, or interfering with the other party or the two children of the marriage; and from removing the children from the jurisdiction of the court without written consent of the other party. On May 9, 1986, appellee filed an answer and counterclaimed for temporary custody of the children during the pendency of the action to succeed by a grant of temporary custody with appellant to have rights of visitation.

Appellant, on October 21, 1986, filed a Petition for Citation of Contempt and Order to Show Cause contending that appellee had refused to allow appellant's requested visitation by removal of the children to Nebraska, in violation of both the temporary restraining order and the order regarding temporary custody. A two-day hearing was held on the issue of custody on November 19, 1986 before the newly assigned judge and different counsel for appellee after prior counsel had suffered a heart attack. At the trial, no evidence was presented as to appellant's financial ability to care for the children, nor as to his plans with respect to their future. In contrast, extensive evidence was presented as to appellee's financial situation, employment history, and future plans regarding the children. The district court filed a decision letter on December 2, 1986 with accompanying visitation guidelines. Based on the totality of the circumstances, the district court awarded permanent custody of the children to appellee with reasonable visitation to appellant, and admonished appellee against interference with appellant's visitation with their children. The letter further directed the parties to resolve, in some manner, the matters pertaining to division of the marital property and concluded:

The Court specifically finds that both parents are fit and proper to have custody of the children.

The Court requests counsel to prepare a form of decree concerning visitation and, of course, their stipulation with reference to property division. This entire case should be wrapped in one judgment, not three or four.

After several unsuccessful attempts by the parties to amicably resolve their property settlement dispute,[3] a continued trial was held on April 21, 1987. In the meantime, appellant had filed a voluntary petition for bankruptcy on March 24, 1987, and suggested to the district court on April 3, 1987 that it no longer had jurisdiction over the disputed property by virtue of an Automatic Stay Order issued by the United States Bankruptcy Court for the District of Wyoming pursuant to 11 U.S.C. § 362(a) of the Bankruptcy Code. On April 20, 1987, appellee applied for and received an order modifying the stay from the United States Bankruptcy Court for the District of Wyoming, which order concluded that the bankruptcy court had taken the case subject to the pending divorce action and that the district court would have the jurisdiction to divide the marital property so that only the property awarded to appellant through the divorce proceedings would remain part of his bankruptcy estate.[4]

At the April 21, 1987 trial, evidence was elicited concerning various nondisclosures and misdisclosures of assets and other property by appellant, from which the district court found

that the plaintiff, Mr. Daniel Connors, has given radically conflicting state-

---

**3.** Appellee forwarded a proposed property settlement and child custody agreement to appellant prior to the November trial. Appellant never responded to the proposal, but submitted his own proposal on November 26, 1986. Appellant forwarded a revised proposal on December 15, 1986, which was rejected by appellee. In light of the continuing dispute and upon information that appellant had disposed of some of the property included within the restraining order's restrictions and had not disclosed his true financial situation to appellee, appellee filed a combined Motion for Order of Contempt and Motion to Reset Hearing on

March 4, 1987. In the motions, appellee requested, inter alia, that the district court order appellant to pay appellee's attorney's fees and costs totaling $9,209.29, and explain the events leading up to the disposal of the property and the non-disclosure of assets.

**4.** See likewise *In Re White*, 851 F.2d 170 (6th Cir.1988), as a case of vacation of the Bankruptcy Court automatic stay to allow divorce proceedings brought by the debtor's wife to proceed to completion in state court.

ments, under oath, concerning his financial affairs and abilities to this Court, and to the United States Bankruptcy Court for the District of Wyoming, and to the Internal Revenue Service on his income tax returns for the years 1983 through 1986, and in his bankruptcy petition. For example, the defendant [sic] reports to the First Interstate Bank of Riverton, N.A., that his yearly earnings for wages, tips and commissions were approximately $50,000.00. At the same time, on his United States Income Tax Return, he shows that he, in effect, lost about $5,000 per year for those very same years[.]

Evidence was also developed regarding various transfers of real property by appellant to his relatives.

The district court found appellee's original property settlement agreement to be reasonable and adopted it for the decree with the provision that various items of real and personal property "in his [appellant's] possession" be delivered to appellee. The district court further found that appellant "has willfully and without cause failed to pay child support since August 1985; that beginning in January 1986, it became very clear that the plaintiff intended to divorce the defendant and that he took steps to defraud and deceive her concerning his intentions and to liquidate property in contemplation thereof * * *." In decision, the appellant was ordered to pay the sum of $600 per month back child support within two months of the date of judgment and $500 per month thereafter until the children either died or reached age twenty-one, and additionally to pay appellee's attorney's fees and costs totaling $9,688.73. Regarding the property transferred to appellant's relatives (transferees), the district court ordered that certain portions of it be either set aside to appellee as her sole and separate property or be held and reserved for the support of the children placing a lien thereon to insure the payment of current and back child support. Finally, the district court ordered that appellant "per-

sonally indemnify and hold [appellee] harmless of and from any debt or obligation owing to the First Interstate Bank of Riverton, N.A., or National First Mortgage Corporation of California; that this order is personal in nature and shall survive, notwithstanding the planned discharge of those debts by the United States Bankruptcy Court."

On May 18, 1987, the *transferees* (as non-parties to the divorce proceeding) filed a Motion for Stay of Execution, a Combined Motion for New Trial and Motion for Relief from judgment Under Rules 59 and 60(b) W.R.C.P., and a Notice of Appeal arguing that the district court did not have jurisdiction over the transferees due to improper service or over the property itself because it was transferred before the date of the restraining order in the underlying divorce action. The following day, appellant also appealed. On June 4, 1987, appellee filed a traverse to the transferees' motions for new trial and relief from judgment. Finally, on June 8, 1987, appellee filed a Motion for Order of Contempt against appellant for his failure to comply with the district court's order regarding child support and the transfer of real and personal property.

Hearing was scheduled for the various motions on September 25, 1987.[5] On November 13, 1987, the district court entered an Order After Hearing amending the Judgment and Divorce Decree to reflect its finding that the district court had no jurisdiction over the transferees or the property, as the parties had not been served. Also found was that the property had been transferred before the date of the temporary restraining order, effectively taking the property out of the marital estate. See an interesting case involving the effect on civil contempt, *Matter of Elder*, 763 P.2d 219 (Alaska 1988). The district court noted that its original order setting aside the property was intended to provide a source from which support for the children would come. After determining that the transfer-

---

**5.** However, because appellant did not appear at the September 25, 1987 hearing, it was rescheduled and held on October 27, 1987. Appellant again elected not to appear despite being personally served.

red property could no longer be considered a part of the marital estate, the district court, on its own initiative, doubled appellant's monthly child support obligations.

At the same time, the district court entered its separate Order of Contempt against appellant charging him with various violations of the district court's judgment, including (1) negotiating and cashing the parties' 1985 Income Tax refund in the amount of $1,400; (2) lying in a sworn affidavit about the nonexistence of items of value stored in the parties' mutual home; (3) failure to turn over various assets to appellee and to her daughter; (4) transferring property to his attorney; (5) failure to pay either back or accruing child support; and (6) failure to pay appellee's attorney's fees and costs in the amount of $9,688.73. The district court further found that appellant had gone to great lengths to defraud appellee, had failed to earn a living despite being physically able to do so in an attempt to avoid paying child support, had hidden various assets to avoid his obligations to appellee and to the United States Bankruptcy Court for the District of Wyoming,[6] and had moved from the state to avoid jurisdiction of the court. In light of its findings and the additional fact that appellant failed to appear for the contempt hearing, the district court revoked appellant's rights to visitation or contact with his children until fulfillment of all obligations imposed in the divorce decree divorce as modified by the Order After Hearing. The district court also issued a bench warrant for appellant's arrest pursuant to which he would be held in the county jail for a period of not less than sixty days without bond. It is unclear from the record, but unlikely from oral argument, that appellant has yet served any of the jail sentence, since if he has returned to Fremont County, it has not been generally advertised.

This appeal followed from both the Judgment and Divorce Decree and from both the Order After Hearing and the Order of Contempt.[7] The Judgment and Divorce Decree is affirmed. The Order of Contempt is affirmed since appellant failed to make any effort to purge the contempt and thereby waived his right to appeal from the contempt order. The order increasing child support is reversed as lacking jurisdictional basis for its entry.

## III. CONTESTED DIVORCE DECREE PROVISIONS

■ We first note our standard on appeal as recently stated in *Igo v. Igo,* 759 P.2d 1253, 1255 (Wyo.1988):

On appeal we review the evidence in favor of [the prevailing party], giving that evidence every reasonable inference that can be drawn and ignoring * * * evidence [of the losing party]. We defer to the trial court's exercise of broad discretion in adjusting the parties' rights and obligations upon marriage dissolution. We will not disturb that decision unless we find that the court abused its discretion.

We have defined judicial discretion as " 'a composite of many things, among which

---

**6.** The record clearly reflects a course of action by the appellant to dispose of assets and to transfer property interests to relatives in an apparent effort to make certain that the appellee did not receive the assets in divorce decree division.

**7.** The parties and the district court treated the W.R.C.P. 59 and 60(b) motions of non-parties as sufficient to delay loss of jurisdiction by the district court as otherwise would have been engendered by a completed appeal by the appellant. During the period, this court never received jurisdiction since the record on appeal was first filed after the contempt hearing was held and the contested contempt orders entered.

The case in procedural status is consequently not pretty and should not be repeated, but we will consider the appeal as presented to be in time as to the original decree by delayed effect until disposition of the motion to amend decree under W.R.C.P. 59 and 60(b). See *Kane v. Kane,* 706 P.2d 676 (Wyo.1985), where correction was permitted pursuant to W.R.C.P. 60(a). This would not only put appellant in time to pursue his decree appeal, but leave jurisdiction with the district court to pursue the noticed contempt proceeding. See W.R.A.P. 3.02, otherwise requiring filing of the record within forty days after filing the notice of appeal.

Additionally, we would note that appellant's brief was filed one day late, which, in accord with W.R.A.P. 5.11, would also normally result in dismissal of the appeal.

are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously * * *.' " Id. at 1255 (quoting *Martin v. State*, 720 P.2d 894, 897 (Wyo.1986)). See also *Nuspl v. Nuspl*, 717 P.2d 341, 345 (Wyo.1986); *Lewis v. Lewis*, 716 P.2d 347, 351 (Wyo.1986); *Grosskopf v. Grosskopf*, 677 P.2d 814, 820 (Wyo.1984); and *Harrington v. Harrington*, 660 P.2d 356, 360 (Wyo.1983). This standard is appropriately applied to each of appellant's allegations of error.

In the broad context of this case which demonstrates no effort by appellant to make any support payments since filing divorce on April 22, 1986, he, as a litigant, lacks credibility to attack enforcement of support obligations for his children. *Mentock v. Mentock*, 638 P.2d 156 (Wyo.1981) determined that this court will not consider any matter on which the record is silent, and we have frequently said that broad discretion is granted to the district court in matters involving divorce and child support. *Smith v. Smith*, 704 P.2d 1319 (Wyo. 1985). Child support, unpaid and accruing, as well as attorney's fees for litigative support to appellee as wife as awarded after bankruptcy was filed, was not absolved by bankruptcy commencement eleven months after appellant started divorce proceedings. If any question was created about jurisdiction in the Fremont County district court, the order vacating stay as entered by the bankruptcy court on April 20, 1987 was finally dispositive. 11 U.S.C. § 523.[8]

This court has carefully considered the totality of the record presented, including testimony of the appellant himself on April 21, 1987. An abuse of discretion is not demonstrated. No error in content of the decree as it related to appellant is presented to require or justify reversal. *Nuspl*, 717 P.2d 341; *Smith*, 704 P.2d 1319.[9]

## IV.  CONTEMPT

Under the court's inherent power to summarily deny the demands of litigants who persist in defying the legal orders and processes of the jurisdiction, we are first called to address if dismissal is appropriate for an appeal by the litigant who continues in contempt of court in the proceeding from which he seeks to appeal. See *Henderson v. Henderson*, 329 Mass. 257, 107 N.E.2d 773, 773–74 (1952), denying right of a mother to appeal from decree awarding permanent custody of her minor child to its father, until she frees herself of contempt by complying with temporary decree, which had given him custody. While we do not adopt an absolute dismissal rule, we will follow a bright line rule that where one who is charged with contempt makes no meaningful good faith effort to comply with the order, the violation of which resulted in the contempt order in the first place, such contemnor likely will be subjected to summary appeal dismissal. This

---

8. When the final order of discharge in bankruptcy was entered is not a matter of record, although stated in brief of appellant to have occurred on August 20, 1987. The record fails to contain sufficient documentation about the bankruptcy to provide any basis for appeal reversal. Additionally, appellant failed to submit authority in brief to sustain consideration of his contentions on this issue. The case cited generally by him, *In re Brown*, 56 B.R. 954 (B.R.E.D. Mich.1986), involved the issue of an amendment before the bankruptcy case was closed and has no established relevancy to divorce, child support and attorney's fees awarded during bankruptcy but after vacation of stay.

9. The district court and counsel for appellee characterized appellant with some justification:
    THE COURT: Oh, I think your client [appellant] is a complete jerk. There's just no ques-

tion about that, * * *, and if I haven't come right out and said that I have now. I don't want there to be any misunderstanding about that.
Counsel for appellee recited in brief that:
    The plaintiff/appellant:
    1.  Has not paid any child support;
    2.  Has never been to visit his children;
    3.  Does not have a job;
    4.  Is putatively supported by his girl friend;
    5.  Liquidated all that he could of the family property;
    6.  Filed bankruptcy in order to remove what was left of the marital property out of the district court's jurisdiction;
    7.  Did not appear at his contempt hearing on October 27, 1987; and now,
    8.  Has the money to bring this appeal on the ground that the trial court was prejudiced?

rule will be applied to cases, as here, exhibiting bad faith on the part of the contemnor in ignoring the authority of the court while he attempts to appeal. Nevertheless, we will address the substantive issues presented here because the rule of compliance has not been previously stated by this court with specificity, and one feature of the contempt order requires reversal in any event.

■ Initially presented by this contempt section is whether the contempt order was civil or criminal in nature, and either direct or constructive in character.[10] "We have repeatedly recognized that the power of a court to punish for contempt is inherent in all courts of general jurisdiction, and * * * that such [power] exists independently of any special or express grant of power." *Bi-Rite Package, Inc. v. District Court of Ninth Judicial Dist. of Fremont County,* 735 P.2d 709, 713 (Wyo.1987) (citing *Horn v. District Court, Ninth Judicial Dist.,* 647 P.2d 1368, 1374 (Wyo.1982); *Townes v. State,* 502 P.2d 991, 993, reh'g denied, 504 P.2d 46 (Wyo.1972); *Estate of Mayne,* 345 P.2d 790, 795 (Wyo.1959); *Application of Stone,* 77 Wyo. 1, 305 P.2d 777, cert. denied 352 U.S. 1026, 77 S.Ct. 593, 1 L.Ed.2d 598, reh'g denied 353 U.S. 943, 77 S.Ct. 818, 1 L.Ed.2d 764 (1957)). A contempt action for failure to make support payments pursuant to a divorce decree is an appropriate remedy. *Graham v. Fenno,* 734 P.2d 983, 985 (Wyo.1987) (citing *Erb v. Erb,* 573 P.2d 849 (Wyo.1978)); *Hepp v. Hepp,* 420 P.2d 118 (Wyo.1966); and *Strahan v. Strahan,* 400 P.2d 542 (Wyo.1965). With these basics noted, examination of the order providing for contempt is required. The last two paragraphs of the order specifically state:

THE COURT FURTHER FINDS that Dan Connors shall have no further visitation rights or contact with his children until all of the above obligations have been fulfilled and until further Order of this Court.

THE COURT FURTHER ORDERS that a Bench Warrant be issued for the arrest and confinement of Dan Connors in the Fremont County Jail for a period of not less than sixty (60) days; Dan Connors to be confined without bond.

Contempts of court are divided into a number of categories. They are usually classified as either civil or criminal in nature, and then, within each of those categories, either as direct or constructive contempts. The major factor in determining whether a contempt is civil or criminal in nature is the purpose for which the power is exercised. Where a contempt ruling imposes imprisonment *conditioned* upon compliance with an order of the court requiring the contemnor to do something the failure of which invoked the ruling in the first place, such contempt is considered civil in nature. *Shillitani v. United States,* 384 U.S. 364, 368–69, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966). "When the petitioners carry 'the keys of their prison in their own pockets,' *In re Nevitt,* 117 F. 448, 461 (C.A. 8th Cir.1902), the action 'is essentially a civil remedy designed for the benefit of other parties and has quite properly been exercised for centuries to secure compliance with judicial decrees.' " *Shillitani,* 384 U.S. at 368, 86 S.Ct. at 1534 (quoting *Green v. United States,* 356 U.S. 165, 197, 78 S.Ct. 632, 2 L.Ed.2d 672 (1958) (Black, J., dissenting)). As this court has stated:

" 'The law will not bargain with anybody to let its courts be defied, for a specified term of imprisonment. There are many who would gladly purchase the honors of martyrdom in a popular cause at almost any given price, while others are deterred by a mere show of punishment. Each is detained until he finds himself willing to conform. This is merciful to the submissive, and not too severe upon the refractory. The petitioner, therefore, carries the key of his prison in his own pocket. He can come out when he will, by making terms with the court that sent him there. But, if he chooses to struggle for a triumph,—if nothing will content him but a clean victory or a clean

---

**10.** The distinction between constructive versus direct contempt is not necessary to the outcome of this case. See *Horn v. District Court, Ninth*  *Judicial Dist.,* 647 P.2d 1368, 1373 (Wyo.1982) for an articulate expression of the distinction.

defeat,—he cannot expect us to aid him.' [In *Williamson's Case,* 26 Pa. 9.]"

*Estate of Mayne,* 345 P.2d at 795–96 (quoting *Ex Parte Bergman,* 3 Wyo. 396, 26 P. 914, 918 (1890)).

On the other hand, where the imprisonment is for a definite term, is mandatory, and release is not conditioned upon the contemnor's compliance with any order of the court, the contempt is criminal in nature and the rights of due process attach. Unlike civil contempt where the court's exercise of its contempt authority is for the purpose of compelling action on the part of the contemnor for the benefit of the complainant, the purpose of imposing a criminal contempt sanction is to punish the contemnor for his actions or disobedience with a lawful order of the court to vindicate the court and its authority.

Very recently, Justice White, in the United States Supreme Court decision of *Hicks on Behalf of Feiock v. Feiock,* 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988), eloquently laid out the distinctions between civil and criminal contempt recognized for decades in this country's judicial system. Acknowledging that the first inquiry in a contempt challenge is into the substance of the proceeding and the character of the relief that the proceeding will afford, the United States Supreme Court stated:

> "If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court." *Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911). The character of the relief imposed is thus ascertainable by applying a few straight-forward rules. If the relief provided is a sentence of imprisonment, it is remedial if "the defendant stands committed unless and until he performs the affirmative act required by the court's · order," and is punitive if "the sentence is limited to imprisonment for a definite period." Id., [*Gompers*] at 442, 31 S.Ct. at 498.

*Id.* 108 S.Ct. at 1429. That court went on to quote:

> "The distinction between refusing to do an act commanded,—remedied by imprisonment until the party performs the required act; and doing an act forbidden,—punished by imprisonment for a definite term; is sound in principle, and generally, if not universally, affords a test by which to determine the character of the punishment." *Gompers,* 221 U.S. at 443, 31 S.Ct., at 499. In the former instance, the conditional nature of the punishment renders the relief civil in nature because the contemnor "can end the sentence and discharge himself at any moment by doing what he had previously refused to do." Id., [*Gompers*] at 442, 31 S.Ct., at 498. In the latter instance, the unconditional nature of the punishment renders the relief criminal in nature because the relief "cannot undo or remedy what has been done nor afford any compensation" and the contemnor "cannot shorten the term by promising not to repeat the offense." Ibid.

*Id.* 108 S.Ct. at 1430.

In other words, "[a]n unconditional penalty is criminal in nature because it is 'solely and exclusively punitive in character.' *Penfield Co. v. SEC,* 330 U.S. 585, 593, 67 S.Ct. 918, 922, 91 L.Ed. 1117 (1947)." *Hicks,* 108 S.Ct. at 1430. See also *Horn,* 647 P.2d at 1373; *Tucker v. State ex rel. Snow,* 35 Wyo. 430, 251 P. 460 (1926); *Laramie National Bank v. Steinhoff,* 7 Wyo. 464, 53 P. 299 (1898); *McCrone v. United States,* 307 U.S. 61, 64, 59 S.Ct. 685, 686, 83 L.Ed. 1108 (1939); and *City of Wilmington v. General Teamsters Local Union 326,* 321 A.2d 123 (Del.Supr.1974). In contrast, a conditional penalty is civil because it is designed specifically to compel action on the part of the contemnor. *Horn,* 647 P.2d at 1373; *Hicks,* 108 S.Ct. at 1430. See also *United States v. Rylander,* 460 U.S. 752, 103 S.Ct. 1548, 75 L.Ed.2d 521, reh'g denied 462 U.S. 1112, 103 S.Ct. 2466, 77 L.Ed.2d 1342 (1983); *Nye v. United States,* 313 U.S. 33, 61 S.Ct. 810, 85 L.Ed. 1172 (1941); *Fox v. Capital Co.,* 299 U.S. 105, 57 S.Ct. 57, 81 L.Ed. 67 (1936); *Lamb v. Cramer,* 285 U.S. 217, 52 S.Ct. 315, 76 L.Ed. 715 (1932); *Oriel v. Russell,* 278 U.S. 358, 49 S.Ct. 173, 73

L.Ed. 419 (1929); *Ex Parte Grossman*, 267 U.S. 87, 45 S.Ct. 332, 69 L.Ed. 527 (1925); *In Re Christensen Engineering Co.*, 194 U.S. 458, 24 S.Ct. 729, 48 L.Ed. 1072 (1904); and *Bessette v. W B Conkey Co.*, 194 U.S. 324, 24 S.Ct. 665, 48 L.Ed. 997 (1904). Contempts are also classified as either direct or constructive, the latter being dependent upon whether the contemptuous conduct is committed in the presence of or out of the presence of the court.

Here, we have a contempt order which is both civil and criminal in nature. In the first paragraph, there is a punishment—revocation of visitation and contact with the children—and an accompanying purge clause—"until all of the above obligations have been fulfilled * * *,"—in reference to the obligations detailed in the Judgment and Divorce Decree. Under this paragraph, appellant will be punished with revocation of his rights to visitation up and until the time that he complies with the obligations imposed by the Judgment and Divorce Decree. In the second paragraph, on the other hand, there is only punishment—a mandatory jail sentence—without purging language. Thus, nothing appellant could do would relieve him of the burden of jail time. See *Yates v. United States*, 355 U.S. 66, 78 S.Ct. 128, 2 L.Ed.2d 95 (1957). Although not clear in the order itself, it would seem that the only reason the trial court issued this second contempt ruling was to punish appellant for his repeated willful failure to appear for hearings in the underlying matter and for the contempt hearing itself.

Applying the rules set forth above, the first paragraph constitutes the imposition of civil contempt, while the punishment embodied in the second paragraph is criminal in nature. In such situations, the United States Supreme Court has stated that where *"both* civil and criminal relief are imposed in the same proceeding, then the ' "criminal feature of the order is dominant and fixes its character for purposes of review." ' *Nye v. United States*, 313 U.S. 33, 42–43, 61 S.Ct. 810, 813, 85 L.Ed. 1172 (1941), quoting *Union Tool Co. v. Wilson*, 259 U.S. 107, 110, 42 S.Ct. 427, 428, 66 L.Ed. 848 (1922)." *Hicks*, 108 S.Ct. at 1433 n. 10 (emphasis in original). Thus, we must determine whether appellant was afforded his due process rights in the proceeding which resulted in the orders of contempt. *Hicks*, 108 S.Ct. at 1430; *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 444, 31 S.Ct. 492, 55 L.Ed. 797 (1911); *Michaelson v. United States ex rel. Chicago, St. P., M. & O. Ry. Co.*, 266 U.S. 42, 66, 45 S.Ct. 18, 69 L.Ed. 162 (1924).

In Wyoming, the due process rights of one charged with criminal contempt have been addressed by this court in W.R. Cr.P. 41.[11] The section applicable here is subparagraph (b) of W.R.Cr.P. 41, as the contempt was constructive criminal contempt. W.R.Cr.P. 41 requires first that notice stating the time and place of hear-

---

11. W.R.Cr.P. 41 provides:

(a) *Summary disposition.*—A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts, shall be signed by the judge and entered of record.

(b) *Disposition on notice and hearing.*—A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant, or on application of the prosecuting attorney, or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. Upon arrest the defendant shall be entitled to admission to bail as provided in these rules. If the contempt charge involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent. Upon a verdict or finding of guilt the court shall enter an order fixing the punishment.

(c) *Jury trial.*—Sentence to imprisonment upon a conviction on a charge of criminal contempt shall not exceed a term of six (6) months unless the defendant shall have been afforded the right to trial by jury on the charge.

ing [12] be provided to the contemnor, allowing him a reasonable time for the preparation of a defense. The notice must also state the essential facts constituting the criminal contempt charged and must describe the proceedings as criminal in nature. Such notice may be given either orally by the judge in court, or upon application of a prosecuting attorney, or by an attorney appointed by the court for that purpose, "by an order to show cause or an order of arrest." W.R.Cr.P. 41(b). Finally, upon arrest, the contemnor is entitled to admission to bail as provided by W.R.Cr.P. 8.

In this case, appellant was afforded all of the due process rights as required under W.R.Cr.P. 41(b).[13] Appellee filed a Motion for Order of Contempt with the court on June 8, 1987 for appellant's failure to comply with various orders of the Judgment and Divorce Decree.[14] Pursuant to appellee's motion, the district court issued an Order for Hearing on June 23, 1987. That order stated, in pertinent part:

> This matter having come before the Court upon * * * [appellee's] Motion for Order of Contempt previously filed here-

in, and the Court having considered the [Motion] before it as well as all other pleadings, papers and documents previously on file herein, and the Court being otherwise fully advised in the premises,

IT IS HEREBY ORDERED, that the above-entitled [matter] be and the same hereby [is] set down for hearing before the Court on the 25 day of Sept, 1987, at 9 o'clock, A.M., in the Courtroom of the Fremont County District Court located in Lander, Wyoming.

Appellant failed to appear for this hearing. A new hearing was scheduled for October 27, 1987 with a similar notice being issued. This second notice was accompanied by appellee's Motion for Order of Contempt informing him of his alleged contemptuous behavior; both the notice and motion were personally served upon appellant in Hemet, California, as indicated by a return of service filed October 2, 1987.

Despite being ordered to personally appear for the contempt hearing, appellant failed to appear and instead forwarded to the court an Affidavit in Response to [Appellee's] Motion for Order of Contempt. In

---

**12.** A hearing is required. *Cooke v. United States*, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767 (1925).

**13.** We note, at this juncture, that the order imposing a jail sentence upon appellant for contempt did not allow for admission to bail. We believe this to be an error of the district court, which will be discussed in the text of the opinion, infra.

**14.** In support of appellee's motion, she made the following pertinent showings:

That the [appellant] has failed, neglected and refused to comply with the Court's [Temporary Restraining] Order, without good or lawful reasons; that [appellant] has sold his private gun collection to Bob Funk; that [appellant] has sold the assets of the Frontier Saw Shop and Gun Shop; that [appellant] has secreted the remaining assets of the Frontier Gun Shop;

2. That the Judgment and Divorce Decree entered in this matter on May 7, 1987, provides:

"IT IS ORDERED:

3. That each and every item set forth in Property Settlement Agreement at page 3, which is attached to [appellee's] Offer of Judgment filed November 13, 1986, be delivered to the [appellee] within thirty days;

4. That the sterling silver set and the china set belonging to Sandy, [appellant's] stepdaughter, be delivered to her within thirty days;

\* \* \* \* \* \*

6. That for the period beginning May 1, 1987, and for all months thereafter, the [appellant] shall pay to [appellee] the sum of $500 per month as and for the support of the minor children * * * until they die or become emancipated and in no event later than their twenty-first birthday;

\* \* \* \* \* \*

13. That each and every item of personal or real property which [appellant] now has in his possession, unless it is exempt property under the Bankruptcy Court of the United States, be and the same is hereby set over unto [appellee] * * *."

That the [appellant] has failed, neglected and refused to comply with the Court's Order, without good or lawful reasons; that [appellant] has made no effort to comply with any of the provisions of the Judgment and Divorce Decree entered May 7, 1987; that [appellant], when asked about the child support payments, stated to [appellee] during a telephone conversation on or about May 30, 1987, that, "If and when I get a job, I'll pay you what I can when I can."

his affidavit, appellant attempted to explain the reasons for his failure to comply with the Judgment and Divorce Decree, indicating he had complied with the Judgment and Divorce Decree to the best of his abilities, and stated that he would be financially unable to personally attend the contempt hearing. Notwithstanding appellant's affidavit, the district court found him in contempt.[15] While a hearing is required in a criminal contempt proceeding, it is not necessary that the adjudged contemnor be present to satisfy the requirement of due process so long as there has been suitable notice and an adequate opportunity to appear and be heard. *Blackmer v. United States*, 284 U.S. 421, 438, 52 S.Ct. 252, 255, 76 L.Ed. 375 (1932).

■ Based on all of the evidence presented on appellant's continuing failure to comply with the district court's lawful order and on his repeated failures to appear at scheduled hearings, including the contempt hearings, we cannot agree with appellant that the district court acted in an arbitrary or capricious manner in holding appellant in contempt of court. The district court, thus, did not abuse its discretion. Moreover, because appellant made *no* meaningful attempt during the entire

proceedings to either cooperate with the district court's jurisdiction or to purge himself of a potential contempt sanction,[16] we can see no reason to permit appellant to appeal the Order of Contempt. Cf. *Maggio v. Zeitz*, 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476 (1947).

■ While it is true that the inability of an alleged contemnor, without fault on his part, to render obedience to an order or decree of court is a good defense to a charge of contempt, *United States v. Fleischman*, 339 U.S. 349, 70 S.Ct. 739, 94 L.Ed. 906, reh'g denied 339 U.S. 991, 70 S.Ct. 1017, 94 L.Ed. 1391 (1950); *Matter of Elder*, 763 P.2d 219, this case is not an appropriate case in which to apply such a rule. Such a rule is only applicable where, after using due diligence, the contemnor is still not able to comply with the order. *Brown v. Cook*, 123 Utah 505, 260 P.2d 544, 547 (1953). The inapplicability of the inability defense here is obvious. Moreover, where an alleged contemnor has voluntarily and contumaciously brought upon himself disability to obey an order or decree, he cannot later avail himself of a plea of inability to obey as a defense to a charge of contempt. *State v. District Court of*

---

**15.** The district court found appellant in contempt for the following reasons:

1. Negotiation and cashing of the parties['] 1985 Income Tax refund in the approximate amount of $1,400.00;
2. That there is nothing of value stored in the house at 706 East Main Street, contrary to the sworn affidavit of [appellant];
3. That most of the assets have not been turned over to [appellee], contrary to the sworn affidavit of [appellant]; and, in particular, the following items have not been returned to [appellee] or [appellant's stepdaughter], as previously ordered by this Court:
  A. China and Silver not returned to [appellant's stepdaughter], valued at $2,075.00;
  B. Two Agnes Agard paintings, valued at $1,250.00;
  C. Photograph of [appellant's] parents to be held for the children, valued at $75.00;
  D. Oak dining table, valued at $750.00;
  E. [Appellant's son's] bedroom dresser and night stand, valued at $100.00;
  F. Hand crocheted table cloth, which was [appellee's] grandmother's, unable to place a value on, not able to be replaced;
  G. Stick pins and antique knick-knacks, valued at $3,000.00;

  H. Gold coin collection, valued at $1,500.00;
  I. Child's roll-top desk, valued at $500.00.
4. That [appellant] transferred a gun worth approximately $3,000.00 to * * *, his attorney at the first two hearings held in this matter;
5. That, as of the end of the month of October, 1987, [appellant] owed to the [appellee] as and for child support the sum of $12,-900.00, accruing at $500.00 per month per child; that [appellant] has made no attempt to pay such sums, that said sums have not been reduced, and he is in contempt of Court;
6. That [appellant] has made no arrangements to pay the attorney's fees of $9,688.73 which were ordered to be paid previously by this Court, within three months of the original decree entered.

**16.** Appellant had notice of a possible contempt sanction long before the actual Order for Hearing indicating the date of the contempt hearing. In its Judgment and Divorce Decree, the district court specifically stated that appellant's failure to comply with specific provisions therein would result in an order of contempt being issued against him.

*the Second Judicial District,* 37 Mont. 485, 97 P. 841, 842 (1908).

■ Appellant further argues with respect to contempt that revocation of visitation through contempt is not an appropriate sanction for failure to pay child support. Appellant cites this court's holding in *Salmeri v. Salmeri,* 554 P.2d 1244 (Wyo.1976) in support of this proposition. The holding in Salmeri was limited to the facts of that case. There we found that the husband's failure to meet his child support obligations was due to a true proven inability to pay. Moreover, unlike appellant here, the husband's failure to pay in Salmeri did not indicate a flagrant disregard of his obligations under the support order. Appellant fails to recognize that he can, at any time, purge himself of his civil contempt at which time his rights to visitation will be reinstated. Although for the purposes of review in this case, we were required to address both contempts from a criminal standpoint, *Hicks,* 108 S.Ct. at 1433 n. 10; *Nye,* 313 U.S. at 42–43; and appellant still has the ability to purge the civil portion of his contempt by complying with the district court's directives. This situation is patently unlike a situation where one parent denies the other his or her rights to visitation because that parent failed to make his or her child support payments. Here, the district court properly invoked its inherent contempt powers to vindicate the authority of the court and its lawful orders. This is clearly permissible under the rules stated above and was not an abuse of discretion in this case. The punishment invoked is merely temporary in nature, with appellant determining its duration through his own actions.

■ While the orders of contempt in themselves are lawful exercises of the district court's inherent power to punish for contempt, the denial of bond to appellant was clearly beyond the district court's authority. W.R.Cr.P. 41(b) states that once arrested, the contemnor *shall* be entitled to admission of bail. By stating that appellant would be held without bond, the district court clearly violated the mandatory language of W.R.Cr.P. 41(b), and this language in the contempt order should be stricken.[17] See also *Matter of Elder,* 763 P.2d 219.

## V. CHILD SUPPORT MODIFICATION

■ Jurisdiction over all aspects of divorce actions in Wyoming is conferred upon the district courts by W.S. 20–2–101 through 20–2–118. *Nicholaus v. Nicholaus,* 756 P.2d 1338, 1340 (Wyo.1988). While the general rule is that a court has continuing jurisdiction to modify the custody and support aspects of its own decree, *Graham,* 734 P.2d at 985; *Erb,* 573 P.2d at 851; *Strahan,* 400 P.2d at 543, such jurisdiction is bestowed upon the court only through proper petition by one of the parents in the underlying action pursuant to W.S. 20–2–113(a). W.S. 20–2–113(a) provides in relevant part:

> In granting a divorce or annulment of a marriage, the court may make such disposition of the children as appears most expedient and beneficial for the well-being of the children. * * * *On the petition of either of the parents,* the court may revise the decree concerning the care, custody, visitation and maintenance of the children as the circumstances of the parents and the benefit of the children requires. [Emphasis added.]

The effect of the foregoing statute, as it applies to the instant case, is that it authorizes the court, "[o]n the petition of either of the parents," to revise and alter its decree. The clear language of this section instructs that the court may *not,* of its own initiative, modify its own order with respect to, among other things, a child support obligation absent a proper petition by one of the parents requesting such modification. *Macy v. Macy,* 714 P.2d 774 (Wyo. 1986); *Mays v. Mays,* 229 Neb. 674, 428 N.W.2d 618 (1988).

---

17. We leave for another day, if it ever should come, whether collateral attack on the jail sentence might be made under habeas corpus or W.R.Cr.P. 41 if appellant reappears in Wyoming to straighten out property settlement and support obligations. *Matter of Contempt Order Issued Against Anderson,* 765 P.2d 933 (Wyo. 1988).

Thus, a petition of one of the parents seeking modification of an existing order is a statutory prerequisite to the court's power to act. W.S. 20–2–113(a). However, we have said that in procedural matters, we must give effect to Wyoming's Rules of Civil Procedure which take precedence over inconsistent statutory provisions in their application to particular circumstances. *Strahan*, 400 P.2d at 544. See also *Rose v. Rose*, 576 P.2d 458, 460 (Wyo.1978); and W.R.C.P. 1, 81 and 87. Yet, while the rules govern the procedure of a case, the application of such rules cannot be permitted to abridge, enlarge or modify the substantive rights of the parties. *State of Wyoming ex rel. Clyde S. Frederick*, 399 P.2d 583, 584 (Wyo.1965).

The question here is clearly one of procedural law, which has been defined as " 'those rules * * * applicable in the administration of the remedies available in cases of invasion of primary rights of individuals in Courts or other lawfully constituted tribunals and agencies[,]' " *Frederick*, 399 P.2d at 585 (quoting *Kellman v. Stoltz*, 1 F.R.D. 726, 728 (N.D.Iowa 1941)), providing " 'the method of enforcing and protecting [the] duties, rights, and obligations as are created by substantive laws.' " *Frederick*, 399 P.2d at 585 (quoting *In Re McCombs' Estate*, 80 N.E.2d 573, 586 (Ohio 1948)). See also *McGuire v. McGuire*, 608 P.2d 1278, 1290 n. 15 (Wyo.1980). More specifically, " 'procedure' is the machinery for carrying on the suit, including pleading, process, evidence, and practice * * *[;] a statute relating to the proper method of obtaining jurisdiction in respective instances [is] a part of the law of procedure and not of substantive law." *Frederick*, 399 P.2d at 585.

The procedural rule potentially inconsistent with W.S. 20–2–113(a) is W.R.C.P. 15(b), which provides in pertinent part:

*Amendments to conform to the Evidence.*—When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.

Rather than being inconsistent with the statute, this court held in *Strahan*, 400 P.2d at 544, that W.R.C.P. 15(b) hereby augmented the predecessor of W.S. 20–2–113(a), and could be applied concurrently. "In other words," the court stated, "the issue of modification may, under certain circumstances, be treated as if it had been requested or petitioned for by a parent," although no actual petition exists. *Strahan*, 400 P.2d at 544. However, unlike Strahan, the circumstances in this case do not warrant application of the liberal W.R.C.P. 15(b), as appellant did not expressly or impliedly consent to the determination of the issue of modification by the court. In fact, appellant, through his attorney, expressly objected to the district court's action resulting in the modification. In light of appellant's objection and because neither party filed the statutorily required petition for modification, it was an abuse of discretion for the district court to modify appellant's child support obligation sua sponte in contravention of the clear language of W.S. 20–2–113(a). Our precedent in *Macy*, 714 P.2d 744 dispositively requires proper pleadings for decree amendment.

## VI. CONCLUSION

The Judgment and Divorce Decree is affirmed with no abuse of discretion shown; the Order of Contempt is affirmed except in detail noted; and the Order After Hearing increasing the child support obligation is reversed.

Affirmed except in detail as remanded for further proceeding in conformity herewith.

THOMAS, J., and BROWN, J., Retired, concur in the result only.