**Michele JARAMILLO,<br>Appellant (Defendant),**

v.

**The STATE of Wyoming,<br>Appellee (Plaintiff).**

**No. 90–83.**

Supreme Court of Wyoming.

Dec. 12, 1990.

Judgment entered for amounts past due."

Leonard D. Munker, State Public Defender, Steven E. Weerts, Sr. Asst. Public Defender, and David Lindsey, Asst. Public Defender, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Karen A. Byrne, Mary B. Guthrie, Sr. Asst. Attys. Gen., Theodore E. Lauer, Director, Prosecution Assistance Program, and Larry Saunders, Student Intern, for appellee.

Before URBIGKIT, C.J., and
THOMAS, CARDINE, MACY and
GOLDEN, JJ.

URBIGKIT, Chief Justice.

█ This appeal determines whether a trial judge is required to inform an immunized witness of the consequences of refusal to testify before charging and convicting that individual of criminal contempt.[1]

█ In her appeal, appellant Michele Jaramillo claims that "[t]he trial court's failure to adequately inform appellant of the nature and effect of a finding of criminal contempt warrants a reversal of the contempt judgment." She also challenges that "[t]he trial court's failure to provide appellant with the entire record as designated by appellant's attorney constitutes a violation of due process and equal protection."

The State, in response, believes that "[t]he trial court adequately informed appellant of her obligation to testify after immunity had been granted, and appellant was sufficiently informed of the consequences of refusal to testify to support the court's judgment of summary contempt." The State also asserts that "appellant was not denied due process and equal protection of the laws by the trial court's limitation of the transcript on appeal to the proceedings relating to appellant's appearance as a witness and the trial court's finding of contempt."

Because we agree that the trial judge must first inform the individual of the consequences of contempt for refusal to testify after testimonial immunity is extended, the trial judge's sentence for criminal contempt is reversed.

---

1. Appellant was charged with criminal contempt under W.R.Cr.P. 41(a). "A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts, shall be signed by the judge and entered of record." W.R.Cr.P. 41(a).

This opinion does not address the case where an individual is charged with criminal contempt under W.R.Cr.P. 41(b).

Whether the trial judge abused his discretion circumscribes our standard of review "since the inherent power to summarily punish for contempt is securely vested within the discretion of a trial judge." *Horn v. District Court, Ninth Judicial Dist.*, 647 P.2d 1368, 1375 (Wyo.1982). In *Horn*, this court explained the difference between civil and criminal contempt as "a civil contempt is generally intended to compel a party to comply with a lawful court order, while a criminal contempt is punitive in character and is enforced so that the authority of the law and the court will be vindicated." *Id.* at 1373. We also noted the difference between "direct" contempt and "constructive" contempt:

> Thus, not only may a contempt of court be of a criminal or civil nature but it also can be either a direct contempt or a constructive, indirect one. Direct contempts are those committed in the court's presence and constructive contempts are those committed outside of the hearing or view of the judge.

*Id.* at 1373. *See Connors v. Connors*, 769 P.2d 336, 344 (Wyo.1989).

Appellant's contempt charge fits into the direct criminal contempt category defined by W.R.Cr.P. 41(a). *Cf. Connors*, 769 P.2d at 345, where both civil and criminal contempt was involved.

In 1989, appellant pled guilty to a drug conspiracy charge. In exchange for the guilty plea, the State agreed not to prosecute her for other alleged drug-related offenses. Later, during the drug trial of her aunt, the State called appellant to testify as a prosecution witness. When the State then asked her about sales of cocaine to her aunt, appellant pled the Fifth Amendment. The State then asked the trial court, based on the earlier plea agreement, to extend immunity to the witness.[2] After explaining that a grant of immunity prevents further prosecution and thereby removes her Fifth Amendment right against self-incrimination, the trial judge granted appellant immunity and ordered her to testify against her aunt. When appellant refused, the trial judge summarily charged her with criminal contempt, and sentenced her to a six-month sentence to be served consecutively with her prior sentence of one to three years.[3]

The State claims the trial court adequately advised appellant of the consequences of her disobedience if she refused to testify. The record does not support the State's claim. In fact, the record reflects just the opposite. The brief discussion of whether appellant understood the consequences of not testifying occurred while she was not present. This occurred in chambers when the trial judge asked appellant's attorney if he had advised his client that she could no longer refuse to testify once she was given immunity. In the absence of his client, appellant's attorney then responded "she

---

**2.** The immunity section is found in the "Wyoming Controlled Substances Act of 1971" under W.S. 35–7–1043, which provides in pertinent part:

> [I]mmunity may also be granted to any person whose testimony is necessary to secure a conviction under this act with the consent of district judge in the district wherein prosecution is to take place. Any person granted immunity under this section shall not be excused from testifying or producing evidence on the ground that the testimony or evidence required of him may tend to incriminate him or subject him to penalty or forfeiture. Any person who except for the provisions of this act, would have been privileged to withhold the testimony given or the evidence produced by him shall not be prosecuted, subjected to any penalty, forfeiture, for or on account of any transaction, matter or thing concerning which, by reason of said immunity, he gave

testimony and produced evidence; and no such testimony given or evidence produced shall be received against him in any criminal proceeding. Provided, no person given immunity under this section shall be exempt from prosecution for perjury or contempt committed while giving testimony or producing evidence under compulsion as provided in this section.

**3.** Pursuant to W.R.Cr.P. 41(a), the trial judge included in the record his "Certification, Findings and Imposition of Sentence for Criminal Contempt" (Findings). W.R.Cr.P. 41(a) requires the trial judge to "certify" he witnessed in court the contemptuous conduct and recite the facts supporting the contempt. See our discussion of the "procedural safeguards" required for summary disposition of criminal contempt under W.R.Cr.P. 41(a) in *Horn*, 647 P.2d 1368 and *Townes v. State*, 502 P.2d 991, *reh'g denied* 504 P.2d 46 (Wyo.1972).

seems to understand the consequences of not testifying." The actual record does not indicate whether the attorney had ever advised the immunized witness that one of the "consequences" could include a charge of criminal contempt and the imposition upon her of an additional jail sentence consecutive to her guilty plea imposed penitentiary term.

The trial judge's discussion with appellant concerned only her grant of immunity and its effect on her Fifth Amendment right. At no point did the trial judge inform appellant she would be held in contempt—and its consequences—if she continued to refuse to testify. The trial judge certified in his findings that "[a]fter hearing the court's admonition that she could be held in contempt, Michele Jaramillo stood by her refusal." The record does not document any "admonition" which status was recognized by admission of counsel for the State during oral argument. Consequently, on the record presented here, appellant was never informed of the serious consequences she faced if charged with criminal contempt.

Appellant does not dispute that her refusal to testify may, under these circumstances, subject her to penal risk of contempt of court. Her claim is essentially that the trial judge must first inform a person of the consequences of being found in contempt in order for that person to make an informed decision whether to decline to testify. We agree with appellant's framing of the issue. Stripped to its core, the State argues that to require the trial judge, under these circumstances, to inform the individual in advance of the consequences of contempt is too great a burden. We disagree. It is the trial judge, and not the individual, who should shoulder the burden of notice. As stated by Justice Frankfurter: "Summary punishment of contempt is concededly an exception to the requirements of Due Process. Necessity dictates the departure. Necessity must bound its limits." *Sacher v. United States*, 343 U.S. 1, 36, 72 S.Ct. 451, 468, 96 L.Ed. 717, *reh'g denied* 343 U.S. 931, 72 S.Ct. 756, 96 L.Ed. 1341 (1952), Frankfurter, Justice, dissenting.

This court has previously discussed the "necessity" for the trial judge's contempt power. *In re Contempt of Haselhuhn*, 740 P.2d 387 (Wyo.1987). We have also placed limits on that necessity.[4] If the totality of circumstances surrounding a particular case demonstrate the trial judge failed to inform the individual of the nature and effect of the finding of contempt, the contempt judgment cannot stand. *Id.* Such failure is an abuse of discretion.

We believe that necessity is best served when the trial judge uses his contempt power to promote the fair and orderly administration of justice and not to punish the uninformed. Thus, under the standard announced in *In re Contempt of Haselhuhn*, we rule that appellant was not adequately informed of the nature and effect of a finding of criminal contempt.[5]

The conviction of Michele Jaramillo for contempt of court is reversed.

THOMAS, Justice, concurring specially.

I have no difficulty with the substantive pronouncements found in the majority opinion, and it is clear that the contempt conviction of Michele Jaramillo must be reversed. I concur in that result. I would, however, premise that reversal on an entirely different ground.

In addressing the defendant, prior to the refusal to testify that led to her conviction, the trial judge told her:

"THE COURT: And because of the existence of this statute and the circumstances of this case and because you're granted immunity and I hereby state for the record that the—that you're granted immunity from prosecution for any activity that you may have engaged in or had

---

**4.** "[T]he power to punish for contempt is not without limitation." *In re Contempt of Haselhuhn*, 740 P.2d at 390.

**5.** Since appellant prevailed on her first issue, we need not address whether the trial judge violat-

ed her right to due process and equal protection by designating for reproduction at the State's expense only a portion of the criminal prosecution record of her aunt, Marie Angela Cordova.

any knowledge of between June 29th and August 4, 1989 in Laramie County, Wyoming, you're granted immunity from prosecution for any such offense at any time, and it would appear from the previous testimony that had been taken that your testimony may be necessary to secure the conviction; therefore, the terms of the statute are applicable. So you're granted immunity as I have outlined. Do you have any questions about the immunity?"

Section 35-7-1043, W.S.1977 (June 1988 Repl.), provides in pertinent part:

" * * * Any person who except for the provisions of this act, would have been privileged to withhold the testimony given or the evidence produced by him shall not be prosecuted, subjected to any penalty, forfeiture, for or on account of any transaction, matter or thing concerning which, by reason of said immunity, he gave testimony and produced evidence; and no such testimony given or evidence produced shall be received against him in any criminal proceeding."

It is apparent from the foregoing that the trial judge purported to limit the immunity to "prosecution for any activity that you may have engaged in or had any knowledge of between June 29th and August 4, 1989 in Laramie County, Wyoming." Since the statute requires that the immunity extend to "any transaction, matter or thing concerning which, by reason of said immunity, he gave testimony and produced evidence," there is no justification in the statute authorizing the grant of immunity for the court to limit the grant of immunity as it did. It is apparent to me that Ms. Jaramillo was not lawfully granted immunity under the statute. In the absence of a proper grant of immunity, she was entitled to refuse to testify for the reasons that she gave. There was no contemptuous conduct for the court to punish.

I would reverse the contempt conviction for the simple reason that there was no criminal contempt committed.