**Becky Sue SKINNER, a/k/a Becky Sue Wederski, a/k/a Becky Sue Self, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 91–238.

Supreme Court of Wyoming.

Sept. 9, 1992.

Leonard D. Munker, State Public Defender, Gerald M. Gallivan, Director, Defender Aid Program, and Donald L. Fuller, Student Director, Defender Aid Program, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Deputy Atty. Gen., Barbara L. Boyer, Sr. Asst. Atty. Gen., and Robin Sessions–Cooley, Student Intern, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT,* and GOLDEN, JJ.

URBIGKIT, Justice.

Appellant was sentenced to a six month jail term for criminal contempt when, following the receipt of a penitentiary sentence, she chose to ignore her surrender date rather than to present herself as directed to begin confinement. She appeals from the additional confinement penalty as the punishment for criminal contempt and contends error in procedural infirmities for assessment of that punishment after jumping bond and failing to report to begin serving her sentence.

We affirm the six month jail sentence.

The specific issues stated are:

I.   Whether the trial court erred in accepting a plea of guilty to a charge of criminal contempt without advising the defendant of her due process rights or obtaining a waiver of those rights on the record before accepting the guilty plea?

II.   Whether the district court erred in accepting a guilty plea without advising the defendant of the right to trial by jury under the Wyoming Constitution on the record and obtaining a waiver of that right in writing or in open court?

III.   Whether the district court judge should have recused himself from the criminal contempt proceeding where the record indicates both a prejudgment as to the facts, and that the supposed contempt of the defendant was directed toward him?

Appellant, Becky Sue Self, a/k/a Becky Sue Skinner (Self), had been charged in a twenty-four count criminal complaint for forgery and, after arrest, was released on her personal recognizance by signing an appearance bond. Immediate plea bargaining was pursued and a three count felony information was filed to which she pled guilty.[1] The plea bargain did not involve sentencing recommendations.

At a September 19, 1990 hearing, the trial court entered a sentence against her of one and one-half to six years confinement at the Wyoming Women's Center, at which time the following exchange occurred:

[DEFENSE COUNSEL]: Your Honor, my client, as you know, has a tiny baby. We would ask if she could have a couple days to make arrangements for that

---

* Chief Justice at time of oral argument.

1.   The record reflects that the plea bargaining activity which Self pursued was not limited to the twenty-four (or twenty-three) forged checks written on her boyfriend's bank account, totalling around $710. Apparently, other bad checks were outstanding and other check offenses had occurred in Natrona County, Washakie County and Laramie County, Wyoming.

baby. She's made some tentative arrangements.

THE COURT: What sort of bail is she on right now?

[DEFENSE COUNSEL]: Twenty-four hundred. OR signature bond.

THE COURT: What sort of assurance do I have, [Defense Counsel], that she's not going to hit the road?

[DEFENSE COUNSEL]: Well, you don't for sure, Your Honor, but I think she's been good about keeping in touch with me and her probation officer. She has made arrangements for the older child, but the younger one has been a harder thing and she needs to get the finalization on those arrangements made. I think that possibly her probation officer could answer that question better than I because she has dealt with her more.

THE COURT: [Defense Counsel], I take the position when people come into this court for sentencing and the possibility exists that they are going to jail, that they should have their affairs in order when they get here so that they go immediately, because one of the problems with our system and one of the criticisms that it undergoes on a daily basis is that justice is too slow and it takes too long to get around to these sorts of things. And I don't like those kinds of delays.

Now, in this case I will make an exception because it involves a very small infant, and that is the only reason; but for future reference you should be on notice when your clients come in here and get sentenced they're going to go immediately to the jail. That's how it is going to work.

[DEFENSE COUNSEL]: Yes, Your Honor. I understand that.

THE COURT: She has until tomorrow afternoon, the 20th of September, 5:00 o'clock p.m., to surrender herself to the Fremont County jail. Now, if you fail to do that and we have to get a warrant for your arrest and bring you back here that will be contempt of Court, and I will sentence you to that separate and apart from your prison sentence, and I will likely sentence you to the maximum possible thing I could for contempt of Court if you take off; do you understand that?

[DEFENDANT]: Yes, I do, Your Honor.

THE COURT: It will only compound your problems severely.

[DEFENDANT]: Yes.

THE COURT: So where do you need to be to turn yourself in?

[DEFENDANT]: No later than 5:00 o'clock tomorrow night down here at the Fremont County jail.

Adequate advance notice had certainly been given to Self about the price to be paid for non-compliance with the trial court's grant of the delay for time to report to begin serving the sentence. *Jaramillo v. State*, 802 P.2d 872 (Wyo.1990).

Instead of complying, Self disappeared. A bench warrant was issued and she remained a fugitive for over eleven months until turning herself in to Fremont County, Wyoming authorities in August 1991. While in the Fremont County jail on September 11, 1991, she was served with an order to show cause, in addition to incarceration on the prior confinement order, addressing why she should not be held in contempt of court for violating the terms and conditions of her bond. On September 16, 1991, she was brought back before the trial court and entered a plea of guilty to the criminal contempt. During the entire process following original arrest, guilty plea and then through the show cause proceeding, Self was represented by the same counsel. Following the trial court's finding of guilt on the contempt for failure to respond to commence her sentence, she was given a term of confinement of six months in the Fremont County jail. This sentence was to be served consecutive to the earlier penitentiary sentence, with twenty days credit for jail time after the rearrest.

The sentencing session was brief and included:

THE COURT: * * * So the issue here today is whether or not you are in fact guilty of contempt of Court for failing to

surrender as ordered. Do you admit or deny you are in contempt of this Court?

[DEFENDANT]: I am in contempt of this Court.

THE COURT: What did you not do to be in contempt?

[DEFENDANT]: I did not show up September 20th, 1990 and submit myself to the Fremont County jail to be transported to the Wyoming Center in Lusk.

THE COURT: All right. And why did you do that?

[DEFENDANT]: I don't really have an excuse. I got scared and I left. I took my daughter and went away and started a new life, but it wasn't a new life.

THE COURT: Okay. Well, is there anything that you or your attorney would like to say to me before I impose sentence on the contempt, or do you know of any reason why I shouldn't sentence you now?

[DEFENDANT]: There's no reason why you shouldn't. Okay. You want— I'm going to make a statement to the Court, Your Honor. * * * [Explanation of her activities ensued.]

\* \* \* \* \* \*

THE COURT: Anything else you want to say?

[DEFENDANT]: I just put myself on the mercy of the Court.

This appeal tests the claimed invalidity of the six month incarceration as the criminal contempt penalty. Appellant argues she had inadequate advice before entry of the plea, including the right to demand a trial

by jury, and finally adds a suggestion of judicial prejudice.

W.R.Cr.P. 41—criminal contempt—then in effect, provided in subsection (a) for summary disposition, which has no applicability here, and then provided in the two following sections:

(b) *Disposition on notice and hearing.*—A criminal contempt except as provided in subdivision (a) of this rule, shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant, or on application of the prosecuting attorney, or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. Upon arrest the defendant shall be entitled to admission to bail as provided in these rules. If the contempt charge involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent. Upon a verdict or finding of guilt the court shall enter an order fixing the punishment.

(c) *Jury trial.*—Sentence to imprisonment upon a conviction on a charge of criminal contempt shall not exceed a term of six (6) months unless the defendant shall have been afforded the right to trial by jury on the charge.[2]

---

**2.** The criminal contempt rule was rewritten in much greater detail with a recodification of the criminal rules effective March 24, 1992:

(a) *Types.*—Criminal contempts of court are of two kinds, direct and indirect.

(1) Direct.—Direct contempts are those occurring in the immediate view and presence of the court, including but not limited to the following acts:

(A) Disorderly, contemptuous or insolent behavior, tending to interrupt the due course of a trial or other judicial proceedings;

(B) A breach of the peace, boisterous conduct, or violent disturbance, tending to interrupt the business of the court; and

(C) Refusing to be sworn or to answer as a witness.

(2) Indirect (Constructive).—Indirect (constructive) contempts are those not committed in the immediate presence of the court, and of which it has no personal knowledge, including but not limited to the following acts or omissions:

(A) Misbehavior in office, or other willful neglect or violation of duty, by an attorney, court administrator, sheriff, coroner, or other person appointed or elected to perform a judicial or ministerial service;

(B) Deceit or abuse of the process or proceedings of the court by a party to an action or special proceeding;

(C) Disobedience of any lawful judgment, order, or process of the court;

(D) Acting as or assuming to be an attorney or other officer of the court without such authority;

(E) Rescuing any person or property in the custody of an officer by virtue of an order or process of the court;

(F) Unlawfully *detaining a witness or party* to an action while going to, remaining at, or returning from the court where the action is to be tried;

(G) Any other unlawful interference with the process or proceedings of a court;

(H) Disobedience of a subpoena duly served;

(I) When summoned as a juror in a court, neglecting to attend or serve, improperly conversing with a party to an action to be tried at the court or with any person relative to the merits of the action, or receiving a communication from a party or other person in reference to it, and failing to immediately disclose the same to the court;

(J) Disobedience, by an inferior tribunal or officer, of the lawful judgment, order, or process of a superior court proceeding in an action or special proceeding, in any court contrary to law after it has been removed from its jurisdiction, or disobedience of any lawful order or process of a judicial officer; and

(K) Willful failure or refusal to pay a penalty assessment levied pursuant to statute.

(b) *Direct contempt proceedings.*—A criminal contempt may be punished summarily if the judge saw or heard the conduct constituting the contempt and the conduct occurred in the immediate view and presence of the court. It may be dealt with immediately or, if done without unnecessary delay and to prevent further disruption or delay of ongoing proceedings, may be postponed to a more convenient time. The judgment of guilt of contempt shall include a recital of those facts upon which the adjudication is based. Prior to the adjudication of guilt the judge shall inform the accused of the accusation and afford the accused an opportunity to show why the accused should not be adjudged guilty of contempt and sentenced therefor. The accused shall be given the opportunity to present evidence of excusing or mitigating circumstances. The judgment shall be signed by the judge and entered of record. Sentence shall be pronounced in open court and reduced to writing, signed by the judge and entered of record. Rule 32 shall not apply to judgment and sentencing for direct contempt.

(c) *Indirect (constructive) contempt proceedings.*—A criminal contempt, except as provided in subdivision (b) concerning direct contempt, shall be prosecuted in the following manner:

(1) Order to Show Cause.—On the court's motion or upon affidavit of any person having knowledge of the facts, a judge may issue and sign an order directed to the accused, stating the essential facts constituting the *criminal contempt charged and requiring the* accused to appear before the court and show cause why the accused ought not be held in contempt of court. The order shall specify the time and place of the hearing, with a reasonable time allowed for preparation of a defense.

(2) Motions; Answer.—The accused, personally or by counsel, may move to dismiss the order to show cause, move for a statement of particulars or answer such order by way of explanation or defense. All motions and the answer shall be in writing unless specified otherwise by the judge. An accused's omission to file motions or answer shall not be deemed as an admission of guilt of the contempt charged.

(3) Order of Arrest; Bail.—If there is good reason to believe the accused will not appear in response to the order to show cause the judge may issue an order of arrest of the accused. The accused shall be admitted to bail in the manner provided by these rules.

(4) Arraignment; Hearing.—The accused shall be arraigned at the time of the hearing, or prior thereto upon the request of the accused. A hearing to determine the guilt or innocence of the accused may follow a plea of not guilty or may be set for trial at a later date or time. The judge may conduct a hearing without assistance of counsel or may be assisted by the attorney for the state or by an attorney appointed by the court for that purpose. The accused is entitled to be represented by counsel, have compulsory process for the attendance of witnesses, and may testify in his own defense. Unless the charged contempt is tried to a jury as provided in subdivision (e), all issues of law and fact shall be heard and determined by the judge.

(5) Disqualification of Judge.—If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the hearing and shall assign the matter to another judge.

(6) Verdict; Judgment.—At the conclusion of the hearing the judge shall sign and enter of record a judgment of guilty or not guilty. In addition to the requirements of Rule 32, a judgment of guilt for contempt of court shall include a recital of the facts constituting the contempt.

(7) Sentence.—Unless an accused may be sentenced to the penitentiary, a presentence investigation is not required but may be ordered. In other respects, Rule 32 shall apply to sentencing for contempt.

(d) *Punishment.*—Punishment for contempt may not exceed the criminal jurisdiction of the court. A sanction for contempt of court may be imposed by a justice of the supreme court, a judge or commissioner of a district court or county court, or a justice of the peace or a municipal judge.

(e) *Jury trial.*—Sentence to imprisonment upon a conviction on a charge of criminal contempt shall not exceed a term of six months unless the accused shall have been

Considering that Self was overtly guilty, she did have notice of her troubled status not only by the statement of the trial court given a year earlier, but additionally by the order to show cause. The first question (in what now may be the last examination of this rescinded rule) is whether additional notice was required and not given before the guilty plea could be accepted by the trial court. We will agree with both Self and the State that Self's failure to appear, as ordered, to commence serving the sentence constituted indirect (constructive) criminal contempt. *United Mine Workers of America, Local 1972 v. Decker Coal Co.*, 774 P.2d 1274 (Wyo.1989); *Laramie Nat. Bank of Laramie City v. Steinhoff,* 7 Wyo. 464, 472, 53 P. 299 (1898). *See also Tracy, Green & Co. v. Warner,* 704 P.2d 1306 (Wyo.1985) and *Anderson v. Anderson,* 667 P.2d 660 (Wyo.1983).

■ We are not persuaded that bail jumping contempt invokes concerns about disrespect for or criticism of the judge so that judicial disqualification was required. "If the contempt charge involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent." W.R.Cr.P. 41(b) (previous rule) (W.R.Cr.P. 42(c)(5)—current rule now in effect). *See also Tucker v. State ex rel. Snow,* 35 Wyo. 430, 251 P. 460 (1926). Additionally, we do not see an issue, either presented or adequately demonstrated, that insufficient time had been provided to Self for her to confer with counsel and consider what defenses could be asserted to the violated appearance order requirement af-

ter a proper notice was given.[3] *See Decker Coal Co.,* 774 P.2d 1274.

We will not extend *In re Contempt of Haselhuhn,* 740 P.2d 387, 390 (Wyo.1987) to provide any Wyoming precedent mandating reversal. No question exists here about the status of the criminal contempt charge nor was the proceeding otherwise conducted as anything except a criminal proceeding. Likewise, there is no question here about Self's full knowledge of the nature of the proceeding and the conduct (or lack thereof) from which the charge arose. The totality of the circumstance test in *In re Contempt of Haselhuhn,* later restated in *Jaramillo,* 802 P.2d 872, was clearly met.

■ Self contends that inadequate notice was given for her as an alleged contemnor to understand the charge made. The record shows that the order to show cause was personally served on September 11, or five days before the hearing, and reasserted the oral warning of nearly a year before. The order to show cause stated:

YOU ARE HEREBY ORDERED to appear before the District Court, Fremont County Courthouse, Lander, Wyoming, in the District Court Courtroom, on the 16th day of September, 1991, at the hour of 2:30 o'clock in the after noon, or as soon thereafter as this matter may be heard, to then and there show cause, if any you have, why you should not be held in contempt of court, penalized according to law, fined and imprisoned, therefore for violating the terms and conditions of your bond imposed on the 20th day of September 1990.

afforded the right to trial by jury on the charge.

(f) *Other criminal or civil remedies.*—An action for or adjudication of criminal contempt shall not limit nor be limited by any other criminal or civil remedies.
W.R.Cr.P. 42.

In addition, the new rules provide in part in W.R.Cr.P. 46.5 what was previously unstated in Wyoming statute or rules that contempt is an available sanction for non-appearance as a bond condition:

(a) *Failure to appear.*—A defendant who, having been released under these rules, know-

ingly fails to appear before a court as required by the conditions of release, or fails to surrender for service of sentence pursuant to a court order, may be punished for contempt.

**3.** There is relevance to the conceptional concept addressed by this court in *Tucker,* 35 Wyo. at 441, 251 P. 460 (quoting *Gorham v. City of New Haven,* 82 Conn. 153, 72 A. 1012 (1909)):

"A motion for an attachment for contempt, when there is a disobedience of an injunctional order, is not disconnected from the decree which it seeks to enforce. Such a proceeding is but an incident to the original action. In effect it is an application for an execution of a judgment already rendered."

This Order is based upon the Judgment and Sentence filed in this matter, a copy of which is attached hereto and served upon you.

At the September 16, 1991 criminal contempt hearing, the trial court judge first recalled for Self what had occurred the prior year by his warning about appearance and then asked:

THE COURT: * * * do you remember that?

[DEFENDANT]: Yes, Your Honor.

THE COURT: And 5:00 o'clock the next day came and went and you were nowhere to be found, and a bench warrant was issued for your arrest. And I was advised when I was over here late August that you had been arrested and were in jail, and [County Attorney] then—it appears as though you were arrested on August 27th.

[County Attorney] then filed a motion to punish you for contempt of Court for failure to abide by my order to surrender yourself by September 20th at 5:00 o'clock p.m.

Have you been served with a copy of that motion and the order to show cause which was issued in this matter on September 6th?

[DEFENDANT]: Yes, I have, Your Honor.[4]

Following Self's admission of contempt for non-appearance and after allocution dialogue, the trial court, before entering sentence, stated and found on the record:

THE COURT: It's unfortunate you chose to do what you did because you just aggravated your problems and made it worse. It's conceivable after you began your sentence at the Womens Center [Defense Counsel] could have petitioned the Court for reduction of your sentence, and it's easily conceivable that you might have been out of that Womens Center by now and on probation and this all behind you except for the restitution.

But rather than face the problem head-on you chose to run from it and seriously disobeyed the order of this Court. So you are judged guilty of contempt.

I find that you're mentally alert, capable of understanding these proceedings and competent to plead guilty to the charge of contempt, which plea is knowingly and voluntarily made, after consultation with competent counsel, without any improper inducement and conditions and with an understanding of the charges.

The sentence that followed was six months in the county jail, a fine of $500, and credit for twenty days served on the six month sentence for presentence confinement time, with the sentence to be consecutive to the earlier entered sentence on the felony charges to be served at the Women's Center. The actual issue presented is whether, under those prior rules, a requirement is now retrospectively established that the technical requirements of an arraignment must be reaffirmed following failure to appear to start sentence resulting in the criminal contempt charge. We decline to do so in this case.

At the same time, prospectively, for the rules now in effect upon arraignment pur-

---

4. This abbreviated proceeding did not include the comprehensive explanation previously furnished to Self before initial sentence constituting arraignment and guilty plea warnings and advice which had included:
1. The right to presumption of innocence.
2. The right to a speedy and public trial.
3. The right to a trial by jury.
4. The right to see, hear and question all the witnesses.
5. The right to present evidence in your favor.
6. The right to testify or to remain silent.
7. The right to have the Judge order into Court all evidence and witnesses in your favor.
8. The right to have a competent lawyer defend you.
9. The right not to be convicted except by proof beyond a reasonable doubt.
10. The right to appeal, if you are convicted.
11. The right to object to the admission into evidence of any evidence taken in violation of your constitutional rights.
Further advice in detail had been given at that earlier time about categories of pleas available, maximum penalty, right to a jury trial and the fact that these rights would be waived by a guilty plea.

suant to W.R.Cr.P. 42(c)(4), we would direct compliance with the misdemeanor adequate notice criteria of W.R.Cr.P. 11(b) and (c) and if the sentence is to be more than six months, advice regarding the right to a jury trial as a full arraignment process in terms similar to requirements for felony advisement is required. *Bloom v. Illinois*, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968). Retrospective concepts were appropriately addressed in *DeStefano v. Woods*, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968).

We would find under the circumstances of this case that Self was provided adequate advice to sustain the explicit finding of the trial court that the guilty plea to the criminal contempt charge was appropriately understood and voluntarily made. *Osborn v. State*, 806 P.2d 259 (Wyo.1991).

■ The real challenge provided under the circumstances of this appeal relating to criminal rules, now rescinded, is whether the six month maximum sentence should have been addressed in advance to the charged party and, more substantively, whether the rule is invalid in limiting a right to the jury trial in sentencing to a term which extends to more than six months. This latter subject interposes into this court's present determination the normal criminal processes that any misdemeanor charge punishable by a jail sentence requires access to a jury. *City of Casper v. Cheatham*, 739 P.2d 1222 (Wyo. 1987); *Brenner v. City of Casper*, 723 P.2d 558 (Wyo.1986); *Lapp v. City of Worland*, 612 P.2d 868 (Wyo.1980).

Without retreating from the established principle of Wyoming case law that an accused has a right to a jury trial, Wyo. Const. art. 1, § 9, in any court where the penalty of a penal confinement sentence may be imposed, we find a compelling distinction for the contempt proceedings.[5]

We continue to follow earlier Wyoming case law which has determined the right of the accused to a jury trial under the state's criminal law structure where incarceration is a potential conviction penalty. That right to a jury trial will not, however, be expanded into the judiciary's contempt enforcement system unless a sentence in excess of six months confinement may be ordered as a punishment for the determined criminal contempt guilt. In this regard, we follow the serious crime/serious contempt delineation established by the United States Supreme Court in *Bloom*, 391 U.S. at 202, 88 S.Ct. at 1482. There, the United States Supreme Court recognized that many contempts are not serious crimes when constituting only petty offenses not coming within the jury trial provisions of the constitution. *Id.* at 209, 88 S.Ct. at 1486. The United States Supreme Court has established guidelines which we can continue to apply to the criminal contempt proceedings. *DeStefano*, 392 U.S. 631, 88 S.Ct. 2093; *Bloom*, 391 U.S. 194, 88 S.Ct. 1477. At the same time, while the Wyoming contempt cases have followed the federal analysis, there remains a significant difference between the criminal cases and the judicial contempt system. *Weiss v. State ex rel. Cardine*, 455 P.2d 904 (Wyo. 1969), *cert. denied* 398 U.S. 927, 90 S.Ct. 1815, 26 L.Ed.2d 89 (1970). *See also Horn v. District Court, Ninth Judicial Dist.*, 647 P.2d 1368, 1375 n. 7 (Wyo.1982) and *Application of Stone*, 77 Wyo. 1, 305 P.2d 777, *cert. denied* 352 U.S. 1026, 77 S.Ct. 593, 1 L.Ed.2d 598 (1957).

The potentiality under general law and this court's W.R.Cr.P. 42, permitting incarceration for conviction of most criminal contempt charges, suggests an operational necessity to leave with the judiciary an expanded authority to enforce court orders and procedures. The reason we differenti-

---

5. We are not unmindful that the criminal contempt is a crime in every fundamental respect as recognized by Justice White in *Bloom*, 391 U.S. at 201, 88 S.Ct. at 1481 (quoting *Gompers v. United States*, 233 U.S. 604, 610, 34 S.Ct. 693, 695, 58 L.Ed. 1115 (1914)):

"These contempts are infractions of the law, visited with punishment as such. If such acts are not criminal, we are in error as to the most fundamental characteristic of crimes as that word has been understood in English speech."

*See also Tucker*, 35 Wyo. 430, 251 P. 460 (quoting *Gompers* ).

ate criminal contempt from normal criminal law violation punishment is that some jail time, even though seldom used, is generally available and exists as an indispensable requirement to provide a judicial tool to keep the justice delivery system operational. In essence, since in nearly any case some confinement time is always potentially available following the criminal contempt citation conviction, any other rule would necessarily convert most if not all criminal contempt proceedings into a jury trial. This would occur even where the anticipated punishment to be inflicted upon the system-abusing individual might only be a modest dollar penalty. *Tucker*, 35 Wyo. 430, 251 P. 460. Without doubt, the power to punish for contempt is inherent in all Wyoming courts. *Connors v. Connors*, 769 P.2d 336 (Wyo.1989); *Application of Stone*, 77 Wyo. at 17, 305 P.2d 777; *Mau v. Stoner*, 12 Wyo. 478, 487, 76 P. 584 (1904).

Consequently, we find ample justification to continue the historical structure of Wyoming law that in a case of criminal contempt, a jury trial is required only if the party guilty of contempt is exposed to confinement for more than six months.[6] *See also Application of Stone*, 77 Wyo. 1, 305 P.2d 777, where this court itself entered a six month jail sentence without providing a jury trial.

Affirmed.

MACY, C.J., filed a dissenting opinion.

MACY, Chief Justice, dissenting.

I dissent. Article 1, Section 9 of the Wyoming Constitution provides in pertinent part: "The right of trial by jury shall remain inviolate in criminal cases." The charge of indirect criminal contempt is a crime punishable by the imposition of a jail sentence.

As recently as 1986, we made it clear that a person charged with such a crime is entitled to have a trial by jury. *Brenner v. City of Casper*, 723 P.2d 558 (Wyo.1986). Appellant was unconstitutionally deprived of her rights to be advised of her entitlement to a jury trial and to elect to have a jury trial. This is not an expansion of a right as the majority states.

---

6. Prior to the adoption in 1968 of the present criminal rules, patterned after the federal ancestor, Wyoming criminal contempt law was generally confined to case discussions and seldom found in statutory provisions except as related to certain specific circumstances and generally for the justice of the peace court. *See, e.g.,* Wyoming Revised Statutes, § 62 et seq. (1931). That Wyoming system of inherently recognized powers of contempt can, however, be traced to the early cases of *Fisher v. McDaniel,* 9 Wyo. 457, 64 P. 1056 (1901) and *Tucker,* 35 Wyo. 430, 251 P. 460.

This character of judicial authority and effectiveness was concisely and cogently stated from the ninth volume of Cyc, p. 26:

"Independent of authority granted by statute, courts of record of superior jurisdiction, whether civil or criminal, possess inherent power to punish for contempt of court. Such power is essential to the due administration of justice, and the Legislature cannot take it away or abridge it."

*State ex rel. Tucker v. Davis,* 9 Okl.Cr. 94, 130 P. 962, 965 (Okl.Cr.App.1913).